FILED

03 MAY -2 PM 1:34

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PATRICK L. BISHOP, SR.,          )
                                 )
    Plaintiff,                   )
                                 )
                                 )     CIVIL ACTION NO.
v.                               )
                                 )     01-AR-1425-S
CITY OF BIRMINGHAM,              )
                                 )
    Defendant.                   )

ENTERED

MAY 0 2 2003

### MEMORANDUM OPINION

    Patrick L. Bishop, Sr. ("Bishop"), a black former Birmingham police officer, filed this action against City of Birmingham ("the City"), claiming that he was terminated by the City both as an act of racial discrimination and in retaliation for his earlier complaints about racial discrimination.  He invoked Title VII (42 U.S.C. § 2000e, et seq.) and 42 U.S.C. §§ 1981 and 1983.  The case was assigned to Honorable H. Dean Buttram of this court.  In due course, the City filed a motion for summary judgment pursuant to Rule 56, F.R.Civ.P.  It asserted, *inter alia*:

> 7.    The Personal [sic] Board, an independent legal entity, heard the evidence and decided the City was correct in finding that plaintiff merited firing.

In the City's reply brief in support of its Rule 56 motion, it argued:

> The Personal [sic] Board of Jefferson County, Alabama ("Personnel Board"), a separate, independent legal



entity, heard the same evidence given this Court.   § *22 of Act 248, 1945 Acts of the Alabama Legislature (Acts), as last amended by Act 684, 1977 Alabama Legislature ("Enabling Act") and Def*. *Ex. 1*.   The Personnel Board accepted the Hearing Officers' [sic] findings of fact, and ruled that the plaintiff's misconduct was unbecoming a member of the civil service and that plaintiff did merit firing.

On April 11, 2002, Judge Buttram granted the City's Rule 56 motion as to all of Bishop's theories and claims except his Title VII claim of retaliatory discharge.   The undersigned would have done the same thing if the case had then been assigned to him. Bishop conceded that his Title VII claim of retaliation was his only real claim.   On May 16, 2002, Judge Buttram entered a final pretrial order in which the City's statement of position included the following:

> Defendant's requirement that plaintiff provide military orders, a doctor's excuse or report for work is not a pretext for retaliation.   It was necessary for the effective operation of defendant's business.   It was based upon rational and lawful factors.   Despite any allegedly improper factor motivating the defendant's actions, it would have taken the same action, *Mt. Healthy City School District Bd. of Educ. v. Doyle*, 97 S. Ct. 568, 576 (1977). [other citations omitted]

> Plaintiff appealed his firing to the Jefferson County Personnel Board, an independent legal entity established by state law.   After an independent investigation, the Personnel Board upheld plaintiff's firing. The Personnel Board was the final decision-maker.   *Act No. 248, § 22 1945 Alabama Legislature Regular Session as last amended by Act 684 of the 1977 Alabama Legislature Regular Session* ("Enabling Act"). [other citations omitted]

On August 30, 2002, after the case was reassigned to the undersigned, the court, in response to a motion *in limine* filed by

the City, entered a somewhat prescient order that provided, *inter alia*:

> **If the Personnel Board's decision were *res judicata*, this case would be over.**

(emphasis supplied).

Between November 20 and November 22, 2002, the case was tried to a jury. The "Findings of Fact, Report and Recommendations of the Hearing Officer" that became final when it was subsequently adopted by the Jefferson County Personnel Board, was received into evidence as Defendant's Exhibit 3. It was received over Bishop's objection, not for any alleged preclusive effect, but "for what it may be worth," similar to an EEOC determination. As will hereinafter appear, Defendant's Exhibit 3 has now been raised to ultimate prominence. For the reason that it recites the evidence and the contentions of the parties in this case better than this court can recite them, and because it is the focus of this opinion, it is attached hereto as an appendix.

When Bishop rested his case before the jury, the City filed a motion for judgment as a matter of law pursuant to Rule 50, F.R.Civ.P. That motion provided, *inter alia*:

> 5.    The Personnel Board of Jefferson County is an independent entity. Established by state law to hear appeals of discipline brought by classified employees. *§ 22 of Act 248, 1945 Acts of Alabama as last amended by Act 684, 1977 Acts of Alabama.*
>
> 6.    Plaintiff appealed his firing to the Personnel Board which appointed an independent Hearing Officer to hear testimony and recommend whether

3

plaintiff's firing should be upheld, modified or reversed.

7.    The Personnel Board's Hearing Officer recommended to uphold plaintiff's firing and her recommendation was adopted by the Personnel Board.

The court took the City's Rule 50 motion under advisement and called upon the City to proceed with its evidence. At the conclusion of the evidence the City renewed its Rule 50 motion, and the court again took it under advisement. After closing arguments and the jury charge, the case was submitted to the jury. The jury, after lengthy deliberation, could not reach a verdict. A mistrial was declared on November 22, 2002.

On November 25, 2002, the court denied the City's Rule 50 motions, but certified its opinion pursuant to 28 U.S.C. § 1292(b) for immediate appeal because the court had serious doubts about the correctness of its rulings. After the City chose not to appeal, the court ordered the case set for retrial on April 21, 2003.

On March 11, 2003, the Eleventh Circuit decided *Travers v. Jones*, 323 F. 3d 1294 (11th Cir. 2003), wherein the Eleventh Circuit held that the facts that had been found by the Georgia equivalent of the Jefferson County Personnel Board after a fair hearing must be given preclusive effect in a subsequent federal employment rights action. The case is startlingly similar to the instant case. Mr. Travers, a firefighter, had been suspended without pay for alleged "insubordination and conduct unbecoming" a public employee. He complained that his discipline was "in retaliation

4

for his having engaged in protected union activity," and that his employer had "violated his First Amendment rights of free speech, freedom of association, and freedom of petition."  The Eleventh Circuit held, *inter alia*:

> We hold that, pursuant to the settled law concerning "**fact** preclusion", the **facts** had been found favorably to the defendants by an administrative hearing officer, and under those **facts** by which plaintiff was bound, their conduct did not violate Travers' constitutional rights.
>
> *   *   *   *   *
>
> Those findings are binding upon the court in a case such as this one if the employee received a full and fair opportunity to present his case in the administrative hearing.  When a state agency, acting in a judicial capacity, resolves disputed issues of **fact** properly before it that the parties have had an adequate opportunity to litigate, federal courts must give the agency's **fact** finding the same preclusive effect to which it would be entitled in the State's court.
>
> *   *   *   *   *
>
> Since Travers had full and fair opportunity to litigate the **factual** issues at the administrative hearing, this Court must give the Merit System hearing officer's **fact** finding preclusive effect.  Travers cannot re-litigate the **facts** in this case.
>
> (emphasis supplied).

As the date approached for the retrial of the instant case, Bishop filed a renewed motion *in limine*, again seeking to preclude any reference by the City to the adverse decision of the Jefferson County Personnel Board.  This precipitated a reconsideration of the legal significance, if any, of the Personnel Board's findings.  In turn, this led to a revisiting of this court's denials of the

City's motions for judgment as a matter of law.  This reexamination was occasioned by, was magnified by, and was conducted in the new light shed by, *Travers.*

Shortly before jury selection began on April 21, 2003, the specific issue of the possible preclusive effect of the Jefferson County Personnel Board's findings was debated.  In the end, the court concluded that the intervening *Travers* decision requires a final disposition in favor of the City, and the court indicated that a written opinion and order would be forthcoming.  There was no mention of the fact that an application for rehearing and rehearing *en banc* had been lodged with the Eleventh Circuit in *Travers* and that the application has not yet been ruled on.

During the colloquy that took place on April 21, 2003, Bishop's counsel urged on the court *Ex parte Boyette*, 728 S. 2d 644 (Ala. 1998), for the proposition that the Jefferson County Personnel Board lacks the authority under Alabama law to rule dispositively on an employment discrimination claim arising under a federal statute and therefore cannot bind a court of competent jurisdiction in a Title VII case.  With this proposition this court does not disagree.  *Boyette* was a case in which Mr. Boyette, an employee of Jefferson County, lost his appeal before the Jefferson County Personnel Board, which did not there purport to hear any claim that Mr. Boyette's age played a part in the decision about which Mr. Boyette was complaining.  Under Alabama law, the

6

Personnel Board has the power to disagree with a public decision-maker after a *de novo* hearing and to substitute its judgment for that of the public decision-maker.   After losing before the Personnel Board, Mr. Boyette filed an action in the state court against Jefferson County, invoking the federal Age Discrimination in Employment Act ("ADEA").   Jefferson County sought to preclude Mr. Boyette's ADEA claim, arguing that the doctrine of *res judicata* applied.   The Supreme Court of Alabama pointed out "that the Personnel Board refused to hear any claim of discrimination," held that plaintiff's "ADEA claim was not within the competence of the Board," and refused to bar the ADEA claim.   Although in the present case the Personnel Board was not competent to decide the ultimate legal question of Title VII liability, it could and did decide disputed questions of **fact** that were clearly within its competence. This is exactly what *Travers* was talking about.   If the **facts** found by a quasi-judicial fact-finder lead inexorably to a final decision of a Title VII claim, then *Travers* governs the outcome.   If Mr. Boyette had based his entire case before the Personnel Board on his age as the only motive for the adverse employment decision about which he was complaining, and if the employer had articulated to the Personnel Board a legitimate, non-age-related reason for its decision, and if the Personnel Board had thereafter expressly found that the articulated reason was the real reason and was not a pretext for age discrimination, and had upheld Jefferson County's

7

decision, the Supreme Court of Alabama, even without *Travers*, would have foreclosed Mr. Boyette's ADEA claim.

In the instant case, the Personnel Board made lengthy findings of **fact**, agreeing with the valid reasons given by the City to explain its decision to terminate Bishop.  Some of those findings were:

> [T]he evidence supports that Officer Bishop misled his supervisors and misrepresented his military service by requesting uninterrupted leave and not advising his supervisors when his official duty orders were different from those reflected on the memoranda he submitted.

> The witnesses presented by the department were credible and the official records submitted corroborated its position.  Officer Bishop was flippant and disingenuous and did not present any corroborating evidence to dispute the specific factual allegations with the exception of the unsworn memo to his attorney.  His cumulative behavior indicated that he did not want to work for the Birmingham Police Department.

> The record, therefore, substantiated that Officer Bishop's conduct constituted violations of Personnel Board Rules and Regulations: Rule 6.2  Section (a); Rule 6.2 Section (i) "insubordination"; Rule 6.2 Section (k) "Neglect of Duty", Rule 6.2 Section (m) "Violation of any lawful or reasonable regulations or order made and given by superior officer"; Rule 6.2 Section (n) "Willful violation of any of the provisions of the Civil Service law of these rules"; and, Rule 6.2 Section (p) "For any other reason deemed to be in the best interest of the public service and not inconsistent with the rules and regulations arising therein; and, Birmingham Police Department Rules and Regulations: Procedure Number 107-1 Section III, Reporting For Duty, Subsection A; Section V ABSENCE WITHOUT LEAVE; Procedure Number 109-3, Section II, Effort and Manner Of Members; Procedure Number 109-5, Section II, Obedience To Orders; Subsection A, Subsection C; Procedure Number 109-12, Section II, False Report or Statement to Superior Officer; Procedure Number 110-2, Section VI General Offenses: Subsection A-2, Subsection A-7, Subsection A-8, Subsection A-12, Subsection A-16,

and Subsection A-36.

* * * * *

Willful failure to report to duty for retraining as ordered; failure; failure to report for work on April 8 and 9, 2000; phoning in sick on April 15, after being denied permission to take off; and failure to provide official orders verifying military duty leave are legitimate, nondiscriminatory, business reasons justifying the department's decision. Bishop did not present sufficient credible evidence to establish that the department's articulated reasons were pretextual...

* * * * *

[T]he employer must show that it had a legitimate, nondiscriminatory business reason for its decision. *Id.* The department met this standard.

There can be no question but that the City articulated legitimate reasons for terminating Bishop.  In fact, the City interposed *Mt. Healthy City School District Bd. of Ed. U.C. v. Doyle*, 429 U.S. 274, 97 S. Ct. 586 (1977), as an affirmative defense, saying that even if its decision to fire Bishop was tainted in the slightest degree by an intent to react unfavorably to Bishop's having made earlier claims of race discrimination, the City would have terminated him anyway.  No one doubts that Bishop was obligated to prove that the City's articulated reasons were pretextual.  If the Personnel Board's findings have any significance whatsoever, they establish as a matter of **fact** that the City's articulated reasons were not pretextual, and instead, were real, legitimate reasons for terminating this or any other police officer.

9

Bishop takes the "fallback" position that the Personnel Board's findings are the product of a conflict-of-interest by the Hearing Officer, and therefore, should be given no significance. Not only does the court find that an attorney acting as a Hearing Officer for the Personnel Board in a case involving a municipal personnel decision is not automatically disqualified by the fact that another member of her law firm earlier represented the same municipality in another matter, but in this case the Hearing Officer made known to the parties these facts, and Bishop expressly waived any right he may have had to disqualify the Hearing Officer.

Lastly, Bishop spent all of his time before the Personnel Board trying to prove that his termination was an act of race discrimination and/or was in retaliation for his earlier claims of race discrimination. His procedural situation is readily distinguishable from that of *Boyette*, in which Mr. Boyette did not present a claim of age discrimination to the administrative agency. There is a necessary difference between the preclusive effect of an administrative decision rendered after a particular issue was raised, and an administrative decision that expressly avoided that issue. Although the Personnel Board here may not have had the kind of jurisdiction over Bishop's Title VII claim that this court has, when, based on the same evidence, the Board found as a **fact** that the City's reasons for terminating Bishop were its real reasons, *Travers* closes out the controversy. The Eleventh Circuit's intent,

manifested in *Travers*, is clear.  It binds this court, even while there is an outstanding application for rehearing and rehearing *en banc*.

### Conclusion

Based on the foregoing, the court will, by separate order, vacate the orders that denied the City's Rule 50 motions and will, instead, grant those motions and dismiss the action.

DONE this ____2^nd____ day of May, 2003.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

11

City's motions for judgment as a matter of law.  This reexamination was occasioned by *Travers*, was magnified by *Travers*, and was conducted in the new light shed by *Travers*.

Shortly before jury selection began on April 21, 2003, the specific issue of the possible preclusive effect of the Jefferson County Personnel Board's findings was debated.  In the end, the court concluded that the intervening *Travers* decision requires a final disposition in favor of the City, and the court indicated that a written opinion and order would be forthcoming.  There was no mention of the fact that an application for rehearing and rehearing *en banc* had been lodged with the Eleventh Circuit in *Travers* and that the application has not yet been ruled on.

During the colloquy that took place on April 21, 2003, Bishop's counsel urged on the court *Ex parte Boyette*, 728 S. 2d 644 (Ala. 1998), for the proposition that the Jefferson County Personnel Board lacks the authority under Alabama law to rule dispositively on an employment discrimination claim arising under a federal statute and therefore cannot bind a court of competent jurisdiction in a Title VII case.  With this proposition this court does not disagree.  *Boyette* was a case in which Mr. Boyette, an employee of Jefferson County, lost his appeal before the Jefferson County Personnel Board, which did not there purport to hear any claim that Mr. Boyette's age played a part in the decision about which Mr. Boyette was complaining.  Under Alabama law, the

# APPENDIX

### JEFFERSON COUNTY PERSONNEL BOARD
### JEFFERSON COUNTY, ALABAMA

CITY OF BIRMINGHAM POLICE )
DEPARTMENT, )
 )
Vs. )          CASE NUMBER 1311
 )
PATRICK L. BISHOP, )

### FINDINGS OF FACT, REPORT AND
### RECOMMENDATIONS OF THE HEARING OFFICER

### PROCEDURAL BACKGROUND

On August 11, 2000, Officer Patrick Bishop, Sr. was terminated by the Birmingham

Police Department (hereinafter "the department"). He filed an appeal and a hearing was held before

the undersigned on April 3, 2001. The undersigned advised the parties that her law firm, Sirote &

Permutt, P.C., had represented officials and agents of the City of Birmingham, but that she was not

personally involved in that representation. Both Officer Bishop and the department waived any

possible conflict to the undersigned presiding as hearing officer.

### CHARGES

Officer Bishop received notice of proposed disciplinary action based upon numerous

allegations of violations of the Police Department's rules and regulations as well as those of the

Jefferson County Personnel Board. The alleged violations were enumerated as follows:

Personnel Board Rules and Regulations:

Rule 6.2 Section (a) "Absent Without Leave,"; Rule 6.2 Section (c)
"Conduct unbecoming an employee in the public service,"; Rule 6.2
Section (i) "insubordination,"; Rule 6.2 (k) "Neglect of Duty," Rule
6.2 Section(m) "Violation of any lawful or reasonable regulations or

order made and given by a superior officer,"; Rule 6.2 Section (n) "Willful violation of any of the provisions of the Civil Service law of these rules," and, Rule 6.2 Section (p) "For any other reason deemed to be in the best interest of the public service and not inconsistent with the rules and regulations arising therein; and,

Birmingham Police Department Rules and Regulations:

Procedure Number 107-1 Section III, Reporting For Duty, Subsection A: " Members and employees of the Department shall report for duty or lineup, roll call, briefing, and inspection at the time and place specified by their Commanding Officer; Section V ABSENCE WITHOUT LEAVE,"Absence from duty without leave or authorized permission by any member or employee of the Department shall be grounds for forfeiture of pay for the time absent and charges may be brought against said member or employee, or other action as directed by the Chief of Police;" Procedure Number 109-3, Section II, Effort and Manner Of Members: Members will direct and coordinate their efforts in carrying out the functions of the Department in such a manner as will tend to establish and maintain the highest standard of efficiency; Procedure Number 109-5, Section II, Obedience To Orders: Subsection A, "Members of the Department shall obey, and execute promptly, any lawful order emanating from any Superior Officer," Subsection C, "All officers shall obey or carry out those orders from a superior officer which are given or relayed to him by an officer of the same or lesser rank when such orders are known to be or understood to be orders from a superior officer;" Procedure Number 109-12, Section II, False Report or Statement to Superior Officer, "Members of the Department shall not make a false statement, or falsify any written or verbal report made to a Superior Officer or intentionally withhold material matter from such report or statement," Procedure Number 110-2, Section VI General Offenses: Subsection A-2, "Disobedience of, or neglect or refusal to comply with, written or oral rules or orders," Subsection A-7, 'Insubordination, or disrespect toward a Superior Officer, Subsection A-8, "Neglect or inattention to duty", Subsection A-12, "Being absent from duty without permission: Any member of the Department absent from duty without authorized leave will forfeit pay for the time absent, and be subject to disciplinary action," Subsection A-16, Making a false statement, report, communication or entry into any official police record, or other official or required report or record," and Subsection A-36, "any other act or omission contrary to good

order and discipline, or constituting a violation of any of the Rules
and regulations of the Department, or of any Department order."

The specific reasons serving as the basis for the alleged violations were:

1.      That he was AWOL on April 8 and 9;

2.      That he phoned in sick on April 15 and 16 after previously requesting those

days off and being advised that due to previously scheduled absences his services were needed;

3.      Failure to comply with the Chief's previous disciplinary order regarding

retraining; and

4.      Failing to provide orders from his military unit verifying that he was on

military duty on the dates that he was absent.

## WITNESSES AND EXHIBITS

The Police Department of the City of Birmingham called the following witnesses:

1.      Chief W. M. Coppage. white male;

2.      Sergeant C. E. Hill, black male;

3.      Lieutenant Charles Rafford, white male;

4.      Sergeant Roberta Payne, black female.

The Department offered the following Exhibits which were admitted into evidence:

1.      Complainant Exhibit 1, Compilation of previous discipline and disciplinary
        proceedings involving Office Patrick Bishop;

2.      Complainant Exhibit 2, April 16, 2000, Memo to Captain Mike Fisher, I.A.D.
        from Lieutenant C. Rafford Re: Request for Investigation of Office Patrick
        Bishop;

3.       Complainant Exhibit 3, Memo dated April 18, 2000, to Captain Mike Fisher from Lieutenant C. Rafford Re: Officer Patrick Bishop;

4.       Complainant Exhibit 4, Memo dated April 26, 2000, to Sergeant R. Payne from Sergeant C. E. Hill Re: Officer Patrick L. Bishop;

5.       Complainant Exhibit 5, Memo dated July 10, 2000, to Chief W. M. Coppage, from Sergeant Roberta Payne Re: Case Number 2000-31D1;

6.       Complainant Exhibit 6, April 25, 2000, letter to Officer Patrick L. Bishop, Sr., from W. M. Coppage Re: Request for Leave of Absence;

7.       Complainant Exhibit 7, Birmingham Police Department Leave and Attendance Record of Officer Patrick L. Bishop;

8.       Complainant Exhibit 8, Official records from the Twentieth Special Forces G.P. (ABN) First SF Re: Military Duty Orders for Patrick L. Bishop;

9.       Complainant Exhibit 9, Request for Leave of Absence by Patrick L. Bishop, dated August 7, 2000, for the period August 9, 2000 until August 29, 2003;

10.      Complainant Exhibit 10, Statement of Patrick L. Bishop in response to Charges; and

11.      Complainant Exhibit 11, Compilation of Memoranda and Orders re: Record of Military Duty for Patrick L. Bishop.

Officer Patrick L. Bishop, a black male, testified on his own behalf.  He also called Officer Barry Deed, a black male.  Officer Bishop introduced the following Exhibits which were admitted into evidence.

1.       Respondent Exhibit A, Response to Officer Exhibit survey by Patrick L. Bishop;

2.       Respondent Exhibit B, March 3, 2000, Grievance designated Harassment/Racism from Officer Patrick L. Bishop;

4

3.   Respondent Exhibit C, March 28, 2000, letter to Commander of West Precinct from Patrick L. Bishop re: Officer's Answer to Supervisor's Reply of Grievance;

4.   Respondent Exhibit D, May 8, 2000, letter to Mr. Donald Burris re: Patrick Bishop from John M. Edens;

5.   Respondent Exhibit E, Decision Upon Determination Hearing of Possible Disciplinary Action to Officer Anthony McPherson from Chief W. M. Coppage, Dated April 17, 2000;

6.   Respondent E, Memo from Headquarters, Twentieth Special Forces Group (Airborne) dated March 2, 2000, to Comptroller from R. Kyle Hannah;

7.   Respondent G. March 30, 2001, Memo from Headquarters and Headquarters Company Twentieth Special Forces Group (Airborne), First SF to Roberson & Roberson Law Office re: Voluntary Duty of Specialist Patrick L. Bishop; and

8.   Respondent Exhibit H, EEOC Charge of Discrimination filed by Patrick L. Bishop dated April 18, 2000.

## FINDINGS OF FACT

Officer Bishop was previously suspended for using excessive force and failing to follow the proper procedures when responding to a back-up call. Because he had been involved in a similar incident in the past, the Chief of Police, W. M. Coppage, determined that Officer Bishop should be suspended for five (5) days and then thereafter be assigned to a more senior officer in the East Precinct for retraining in the areas of his deficiency.

Officer Bishop served the suspension. But after the end of the suspension, instead of reporting to the East Precinct for retraining, Officer Bishop advised the Department that he was volunteering for military duty in Honduras until the end of March. The Department granted Bishop's leave and instructed him to provide official orders verifying his term of duty in accordance with

governing rules and regulations. Officer Bishop initially supplied a Memorandum stating that he would be on active duty from February 29, 2000 until April 1, 2000. He was again asked to provide official orders. The Department subsequently received Official Orders showing that Officer Bishop was ordered for military duty from February 28, through March 31, 2000. (See Complainant, Exhibits 3, 5, 8 and Exhibit 11)

It is undisputed that departmental regulations require that official orders from the unit must be submitted to the Department in order to comply with the notice requirement. Memoranda are unacceptable. Officer Bishop was aware of this.

After Bishop's military leave expired on March 31, 2000, he did not return to work. He was contacted and represented that he was still on leave and submitted a Memorandum showing that he would be on duty from March 28, through April 7, 2000. The Department subsequently received official orders from Officer Bishop's Unit showing that Officer Bishop was on duty from April 4, 2000 through April 7, 2000. (See Complainant Exhibits 3, 5 and 8.) Bishop did not report to work on April 8 and 9, nor did he receive or seek permission to be off. On April 10, Bishop was contacted by Sergeant Al Reid, his supervisor, and asked why he did not report to work on the 8th and 9th. Officer Bishop said that he was still on military leave at that time. He also stated that he had mailed copies of his orders for that period. Sergeant Reid advised that the Department had not received verification that he was on duty on the 8th and 9th and asked him to bring a copy to the Department by Tuesday, April 11. Officer Bishop did not bring the orders on the 11th. When contacted about the orders, he said that they had not yet been printed but he would provide a copy the next day. (See Complainant Exhibits 3 and 5.)

On April 12, Lieutenant Charles Rafford contacted Officer Bishop's military unit and spoke with Sergeant Phillips, Bishop's supervisor. Sergeant Phillips told Lieutenant Rafford that the timely submission of orders for Officer Bishop to the Police Department was not a priority for the unit. Lieutenant Rafford asked Sergeant Phillips whether Officer Bishop had been on duty pursuant to military orders on April 8 and 9 and Sergeant Phillips denied same. ( See Complainant, Exhibits 3 and 5)  The Department later received records from the Unit verifying Bishop's duty orders which specifically stated that he was not on duty on April 8 and 9. (See Complainant Exhibit 8)

Subsequently, the Department received memoranda showing that Officer Bishop would be on military duty April 11, through 14 and April 17, through April 21, 2000.  Lieutenant Rafford called Officer Bishop and advised that the Department had received his Memoranda which indicated that he would be available for police duty on April 15.  Consequently, Lieutenant Rafford told Officer Bishop to report to the East Precinct on April 15, since he was not on military duty. (See Complainant Exhibits 3 and 5.)  Lieutenant Rafford testified during the hearing that Officer Bishop laughed. Lieutenant Rafford asked him if he understood the directions and Officer Bishop laughed again and then said, "10-4." (See Complainant Exhibit 3)  A short time later, Officer Bishop called back to request time off on April 15· and 16, Saturday and Sunday.  Officer Bishop was advised by Captain Williams of the East Precinct that "the books were full," meaning that there were so many scheduled absences that the Police Department needed remaining staff to work.  Sergeant Roberta Payne testified that Officer Bishop told Captain Williams that he would just call in sick on those days.  Officer Bishop said he could not recall whether he said that to Captain Williams or not.  Sergeant Payne also testified that Captain Williams wrote a note for the duty sergeant requesting

that a memo be made if Officer Bishop requested to be off on April 15. (See Complainant Exhibits 3 and 5)

Sergeant Charles Hill was the duty sergeant on April 15. On that day, Officer Bishop phoned in sick. Sergeant Hill testified that he did not recall Bishop stating the reason why he was sick, but he requested that Bishop provide a doctor's excuse. Sergeant Hill testified that it was within his discretion as supervisor to request a doctor's excuse, particularly when he felt that the employee was lying or taking time off after previously being denied permission. He explained that there was a practice of officers phoning in sick after they had been previously advised that they could not take time off. He also said he had been advised that Officer Bishop had a pattern of not coming to work after being off duty. (See Complainant Exhibits 3, 4, and 5.) Officer Bishop never provided Sergeant Hill with a doctor's excuse.

On April 18, 2000, Officer Bishop requested military leave from April 24, through June 30. (See Complainant Exhibits 2 and 6.) The requested leave was granted based upon the condition that Officer Bishop provide official orders. (Complainant Exhibit 6)

Lieutenant Rafford subsequently requested that an investigation be done by Internal Affairs based upon what he perceived to be Officer Bishop's unwillingness to report for duty at the Eighth Precinct in accordance with Chief Coppage's previous directives; Officer Bishop's failure to provide official orders verifying his military leave; Officer Bishop's misrepresentations regarding the reasons why he did not report to work on April 8, 9; and his phoning in sick after previously being denied time off on April 15. (See Complainant Exhibit 2.)

Sergeant Roberta Payne from Internal Affairs, conducted the investigation. She checked the department's records to verify the orders that Officer Bishop had provided. She also

visited Officer Bishop's unit on more than one occasion to retrieve copies of orders. She was advised by Sergeant Phillips that Officer Bishop's unit generally only worked four days a week and that Officer Bishop had not been on continuous non-stop military duty. She was also advised that an officer on military duty would not receive orders prior to an assignment if he volunteered but that the orders would be done after the time was served. Officer Bishop had been serving on a volunteer basis. Based upon her investigation, Sergeant Payne recommended that the charges serving as the basis for the investigation should be sustained. She submitted a Summary Letter of Findings showing that the evidence supported the charges. (See Complainant Exhibit 5.) This Summary was submitted to the Chief and, thereafter, Officer Bishop received notice of possible disciplinary action based upon his failure to report to work on April 8 and 9 without permission; his failure to provide orders verifying his military assignments; his failure to report for training to the Eighth Precinct in accordance with the Chief's previous directives; and his phoning in sick on April 15 after previously being denied permission to be off on that day. Chief Coppage testified that the disciplinary hearing was rescheduled several times to accommodate Officer Bishop. At the conclusion of the hearing, Chief Coppage decided to terminate Officer Bishop based upon the stated allegations.

Officer Bishop testified that he volunteered for military duty after his suspension because the unit needed his special expertise. He did not deny, nor was it disputed, that the police department was short staffed and needed his services also. Bishop felt that being ordered to do retraining at the East Precinct was demeaning. He admitted that he did not report to the East Precinct for training as ordered until July 1, 2000. But his official orders show that there were many days when he was not on military duty between his suspension and July 1. ( See Complainant Exhibit 8.)

Bishop testified that there was confusion about when his off days were with the Department. But there is no dispute that he did not receive permission to be off on April 8 and 9.

Officer Bishop continued to maintain that he was on duty on April 8 and 9 and submitted an unsworn statement dated March 30, 2001, from an officer who also claimed to be on duty those days. (See Respondent Exhibit G.)  He did not call anyone from the unit to testify on his behalf or verify his account of days worked.

Officer Bishop also requested a three year leave of absence from August 2000 until August, 2003. (Complainant Exhibit 9.)  During his testimony Bishop said that he was seeking leave for a specialized military operation in which was out of state. He also stated  that the position he was seeking would not be filled until this September in 2001.

Officer Bishop laughed during the hearing when asked for an explanation or clarification.

Officer Bishop contends that the real reason for his termination was based upon discriminatory treatment due to his race, black, and in retaliation for filing previous complaints of racism. In support of his claims of discrimination Officer Bishop testified that he and his wife, who is also on the police force, were treated differently than white couples; that he was disciplined more severely than a white officer; and that whites received better assignments. (See Respondent Exhibits A, B and E.)

Officer Bishop claimed that he was assigned to a different shift than his wife because they were Black.  The evidence showed that a white couple was also assigned to different shifts because the department thought it would lead to less disruption in the event of an emergency or other extenuating or unforeseen circumstances. Bishop admitted this on cross examination. Officer Bishop

also submitted a disciplinary report showing that a white officer, Officer Anthony McPherson was suspended for two days for failing to terminate a chase. (See Respondent Exhibit E.) He did not submit any evidence to show whether the officer had previously committed a similar offense for which he had been disciplined. He was not involved in the Officer McPherson's disciplinary proceeding therefore, he could not testify about the evidence presented. Chief W. M. Coppage was presented with McPherson's disciplinary report during the hearing, but he said without more he could not testify about the specific reasons for the discipline given or whether McPherson had been disciplined for a similar infraction in the past.

Finally, Bishop submitted his response to a questionnaire/survey from the department which solicited officers' input regarding perceived problems and suggested solutions. Bishop's response questioned whether the department's decisions regarding assignments were based on race, favoritism, how officers look, or "how well they kiss butt." (See Respondent Exhibit A.) Significantly, when the undersigned asked Officer Bishop to describe and explain the incidents which supported his claim that he was treated differently because of his race, his attorney said that was not necessary because he was also claiming retaliation. Bishop, therefore declined to provide critical support for his race discrimination claim.

Officer Barry Deed was also called to testify on Officer Bishop's behalf. He testified that officers in the department were treated differently but he did not know whether it was based on race or favoritism. Officer Deed had also been disciplined and questioned the department's assignments. He complained that Lieutenant Rafford gave his beat to a white officer because of low "monthlys" and that this was racist. He then admitted that when his "monthlys" picked up Lieutenant Rafford recommended him for the task force. The Supervisor, a white female, of the task

force did not want him. He admitted that this was not based on race, but rather because in the past he had been too aggressive or hot headed. Officer Deed was not involved in any of the situations related to Officer Bishop's discipline or termination.

Officer Bishop offered Respondent's Exhibits A and B as evidence in support of his retaliation claims. He also introduced a copy of his EEOC charge filed on April 18, 2000. (See, also, Respondent Exhibit H.) Chief Coppage and Sergeant Payne were aware that Officer Bishop filed an EEOC charge. They both testified that they were not aware of the internal complaints. Sergeant Hill was not aware of the internal complaints or the EEOC charge. Lieutenant Rafford was aware of the internal complaints, but not the EEOC charge.

Chief Coppage, Lieutenant Rafford, and Sergeant Payne all denied that the decision to terminate Officer Bishop was based upon his race or was in retaliation because he filed complaints claiming racism. They also testified that the reason for the action was because: he willfully failed to report to duty for retraining as ordered; he failed to report for work on April 8 and 9, 2000; he phoned in sick on April 15, after being denied permission to take off; and he failed to provide official orders verifying his military duty leave. They essentially believed Officer Bishop deliberately misled them regarding his military service to avoid reporting for duty.

## CONCLUSIONS AND RECOMMENDATION

The overwhelming credible evidence of record supports that Officer Bishop failed to report to work for roll call on April 8 and 9; phoned in sick to avoid reporting to work on April 15, after being denied permission to take off on that day; and refused to complete his retraining as previously ordered. Although there is some question as to whether Officer Bishop's unit was

responsible for the delay in the department receiving official orders verifying duty, the evidence supports that Officer Bishop misled his supervisors and misrepresented his military service by requesting uninterrupted leave and not advising his supervisors when his official duty orders were different from those reflected on the memoranda he submitted.

The witnesses presented by the department were credible and the official records submitted corroborated its position. Officer Bishop was flippant and disingenuous and did not present any corroborating evidence to dispute the specific factual allegations with the exception of an unsworn memo to his attorney. His cumulative behavior indicated that he did not want to work for the Birmingham Police Department.

The record therefore, substantiated that Officer Bishop's conduct constituted violations of Personnel Board Rules and Regulation: Rule 6.2 Section (a); Rule 6.2 Section (i) "insubordination,"; Rule 6.2 (k) "Neglect of Duty," Rule 6.2 Section(m) "Violation of any lawful or reasonable regulations or order made and given by a superior officer,"; Rule 6.2 Section (n) "Willful violation of any of the provisions of the Civil Service law of these rules," and, Rule 6.2 Section (p) "For any other reason deemed to be in the best interest of the public service and not inconsistent with the rules and regulations arising therein; and, Birmingham Police Department Rules and Regulations: Procedure Number 107-1 Section III, Reporting For Duty, Subsection A; Section V ABSENCE WITHOUT LEAVE; Procedure Number 109-3, Section II, Effort and Manner Of Members; Procedure Number 109-5, Section II, Obedience To Orders: Subsection A, Subsection C; Procedure Number 109-12, Section II, False Report or Statement to Superior Officer; Procedure Number 110-2, Section VI General Offenses: Subsection A-2, Subsection A-7,Subsection A-8, Subsection A-12, Subsection A-16, and Subsection A-36.

The record evidence did not support nor did the department put in to question that Officer Bishop's performance as an officer was the reason for his termination. Therefore, there was insufficient evidence to support a violation of the following rules: Rule 6.2 Section (c) "Conduct unbecoming an employee in the public service,"; and Rule 6.2 Section (h)"incompetency or inefficiency," of the Personnel Board Rules and Regulations.

Officer Bishop challenged the department's discipline on the grounds of race discrimination and illegal retaliation.  His attorney also stated that 38 U.S.C.A. § 4301, et seq. governed military leave but he did not allege any violations of that statute, therefore the undersigned will not address any issues related to that act.

Although the evidence supported the overwhelming majority of the violations serving as the basis for the termination, the department's decision to terminate Officer Bishop should not be sustained if there is merit to his allegations of race discrimination or retaliation.  The credible evidence of record militates against a finding of discrimination. The evidence presented by Officer Bishop supporting race discrimination, including his testimony and that of Officer Deed, show that they gave varying reasons for the difference in treatment between police officers. Officer Bishop also did not present sufficient evidence to establish that he was similarly situated to Officer McPherson for the purposes of a valid comparison. Additionally, Officer Bishop refused to provide testimony to explain his claims of disparate treatment. Even if he had submitted sufficient evidence to lead to an inference of race discrimination, this presumption would be rebutted if the department articulated a legitimate, nondiscriminatory, business reason for its decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U. S. 253 (1981). Willful failure to report to duty for retraining as ordered; failure to report for work on April

8 and 9, 2000; phoning in sick on April 15, after being denied permission to take off; and failure to provide official orders verifying military duty leave are legitimate, nondiscriminatory , business reasons justifying the department's decision. Bishop did not present sufficient credible evidence to establish that the department's articulated reasons were pretextual and the real reason for his termination was race. *McDonnell Douglas; Burdine;* and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993).

Officer Bishop easily established a case of retaliation by showing that he filed an EEOC charge and internal complaints, that he was terminated, and that there was a causal connection between the two actions based on proximity in time. *Gupta v. Florida Board of Regents,* 212 F.3d 571 ( 11th Cir., 2000). An individual can maintain an action for retaliation even if the underlying claim of discrimination is not supported. Id. The standard for overcoming retaliation is the same as that for overcoming the presumption of race discrimination: the employer must show that   it had a legitimate, nondiscriminatory, business reason for its decision. *Id.* The department met this standard.

Based upon the foregoing, the undersigned recommends that the department's decision to terminate Officer Bishop should be sustained.

April 16, 2001
Date

*Gaile Pugh Gratton*
Gaile Pugh Gratton
Hearing Officer

**OF COUNSEL:**

SIROTE & PERMUTT, P.C.
2311 Highland Avenue, Suite 500
Post Office Box 55727
Birmingham, AL 35255-5727
PH: (205) 930-5100
FX: (205) 930-5101
(205) 930-5301

16